741 So.2d 103 (1999)
Venson MAGGIO, et al., Plaintiffs-Appellees,
v.
Huey ROBINSON, et al., Defendants-Appellants.
No. 31,913-CA
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*104 Loyd Kenneth Thomas, Counsel for Defendants-Appellants.
Thomas A. Wilson, Jr., Counsel for Plaintiffs-Appellees.
Before NORRIS, C.J., CARAWAY and KOSTELKA, JJ.
*105 NORRIS, Chief Judge.
The defendants, Huey Robinson and Ruthie Robinson[1] ("Robinson"), appeal a judgment that found them in contempt of court, assessed damages and attorney fees, and denied various exceptions. For the reasons expressed, we amend to delete the award of attorney fees but in all other respects affirm.

Procedural background
In 1994 the plaintiffs, Venson and Sharon Maggio ("Maggio"), filed a possessory action against Robinson, their neighbors to the east. The District Court ruled for Maggio, awarding possession of the disputed strip of land and ordering Robinson to remove a steel fence that encroached Maggio's tract by 69 feet. This court affirmed in an unpublished opinion. Maggio v. Robinson, 29,007 (La.App. 2 Cir. 1/22/97), 690 So.2d 1127. Robinson never sought writs from the Supreme Court or filed a petitory action, so the judgment became final in February 1997.
In October 1997 Maggio filed the instant rule.[2] This alleged that Robinson did not remove the encroaching fence, only part of it; that Robinson destroyed or damaged parts of Maggio's fence, which marked the true boundary, and further damaged Maggio's tract by letting cattle stray onto it and graze; and that Robinson had placed a locked gate on Robinson Road, blocking access to Maggio's enclosed tract. The rule sought a contempt judgment against Robinson; a permanent injunction enjoining Robinson from damaging Maggio's fence and from obstructing the only road to Maggio's tract; and damages, attorney fees and costs.
Robinson filed various exceptions, inter alia dilatory exceptions of unauthorized use of summary proceedings and improper cumulation of actions. The thrust of these exceptions was that summary proceedings were not proper for damage claims, and ordinary and summary process claims could not be cumulated.
A hearing on the preliminary injunction was held on March 6, 1998.[3] The ensuing judgment, dated March 17, ordered Robinson to make and maintain an opening 20 feet wide in his fence, to allow Maggio access; enjoined Robinson from obstructing the road in any way; and ordered Robinson to remove the remaining 69 feet of his fence. The contempt rule was continued; the minutes state that the tort issue was also continued.
In March the District Court sustained Robinson's exception of unauthorized use of summary proceedings, giving Maggio 15 days to amend. Maggio filed an amended petition to "convert" the tort claim to ordinary process.[4]
In May 1998 Robinson filed a peremptory exception of nonjoinder of an indispensable party.[5] This exception urged that the cattle that caused the damage actually belonged to "Joe Robinson, who died in 1978," so the estate of Joe Robinson must be joined to adjudicate the claim properly. The District Court signed an order directing Maggio to amend the suit and "join all indispensable parties" by June 1, 1998.
*106 The matter came to trial on all remaining issues on May 6, 1998. At the outset, the District Court denied the peremptory exception of nonjoinder. Maggio produced evidence that the encroaching fence had not been removed until March, the road was still blocked by a gate, and that someone had cut down portions of Maggio's fence, allowing Robinson's cattle to damage the property. The District Court ruled orally that Robinson was in contempt for failing to remove the fence and keep their cattle off the tract (suspended 10-day sentences were imposed). However, the court found insufficient evidence that Robinson had cut down Maggio's fence. The court assessed property damage of $2,000, general damages of $1,500, and attorney fees of $2,000. Robinson has appealed, raising four assignments of error.

Discussion
By his first assignment Robinson urges the District Court erred in denying his dilatory exception of improper cumulation of actions. In brief he reiterates, without elaboration, that a rule to show cause is a summary proceeding which cannot be cumulated with the trespass claim, which is by ordinary process. Our review of the record has uncovered no ruling on the exception of improper cumulation, and no objection to the proceedings.[6]
A dilatory exception is a procedural device to retard the progress of the action, not defeat it. La. C.C.P. art. 923. Because the improper cumulation does not defeat the action, the Code specifically states that it is waived if not pled. La. C.C.P. art. 926 B. The exception must be tried before the trial of the case. La. C.C.P. art. 929 A. Even if he files a dilatory exception, the defendant must insist upon a hearing and ruling; failure to do so, or to object to going forward on the day of trial, is deemed a waiver of the exception. Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, and citations therein.
As noted, Robinson did not insist on a ruling on this exception prior to trial or object to the cumulated hearing. The exception is therefore deemed waived. Moreover, Robinson has not shown that the evidence regarding either the contempt or the damage claim would have differed had the matters been separated. Without a showing of prejudice, we will not disturb the completed trial. This assignment lacks merit.
By his second assignment Robinson urges the District Court erred in denying his peremptory exception of nonjoinder without allowing him to introduce evidence in support. In brief he reiterates that Joe Robinson's estate, not the individual defendants, actually owned the cattle, so the estate is needed to adjudicate the claim fully and fairly.
Strict liability for the damage caused by animals may be based either on ownership of the animals (La.C.C. art. 2321) or on the care, custody or control of them, called garde (La.C.C. art. 2317). Rozell v. Louisiana Animal Breeders Coop, Inc., 496 So.2d 275 (La.1986); DeRouen v. Audirsch, 25,847 (La.App. 2 Cir. 6/28/94), 639 So.2d 476. When the owner is found liable, the custodian may owe him indemnity. See Rozell, supra. We are not aware of any requirement that both the owner and the custodian must be joined to adjudicate a damage claim fairly and fully.
Although Maggio's rule refers to "their [Robinson's] cattle," the claim is clearly based on Robinson's failure to keep the cattle in their garde from entering Maggio's property and damaging it. Mrs. Franklin admitted that she and her brother had been taking care of the cattle since before the lawsuit arose. On this record, Maggio properly named the custodians of *107 the cattle. The owner was not needed for complete adjudication. This assignment lacks merit.
By his third assignment Robinson urges the District Court erred in awarding $2,000 in attorney fees "in the absence of evidence of fees attributable to the issue of contempt of court." He contends there is no record evidence to support the quantum. Maggio responds that $2,000 is within the court's great discretion and reasonable under Rules of Prof. Conduct, Rule 1.5(a) and State v. Williamson, 597 So.2d 439 (La.1992).
Under Louisiana law attorney fees are not allowed except where authorized by special statute or by contract. See, e.g., Rivet v. State, 96-0145 (La.9/5/96), 680 So.2d 1154. The applicable contempt statutes do not provide for attorney fees. La. C.C.P. art. 3611; R.S. 13:4611; Reeves v. Thompson, 95-0321 (La.App. 4 Cir. 12/11/96), 685 So.2d 575; Shanklin v. Shanklin, 376 So.2d 1036 (La.App. 1 Cir. 1979).[7] The portion of the judgment awarding attorney fees must therefore be reversed.
By his fourth assignment Robinson urges the District Court erred in finding him in contempt. He argues that the preliminary injunction is "not clear but ambiguous." Specifically he contends that the original March 17 judgment (attached to his brief as Exhibit "A") did not set out "expressly defined misconduct" and had to be clarified by a later judgment (his Exhibit "C").
Contempt of court is defined as any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Constructive contempt includes the "wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La. C.C.P. art. 224(2). To justify a contempt judgment, the conduct must be intentional, knowing, and without justification. Nelson v. Nelson, 421 So.2d 366 (La.App. 1 Cir.1982). The burden of proof is on the complaining party; however, the District Court is vested with much discretion in determining whether a party should be held in contempt. Lirette v. Griffin, 556 So.2d 137 (La.App. 5 Cir.1990).
We have closely examined both exhibits affixed to Robinson's brief. These appear to be duplicate printouts or Xerox copies of the March 17 judgment.[8] That judgment enjoins Robinson, or any person acting on his behalf, from "obstructing the Robinson Road in Bossier Parish, Louisiana in any manner whatsoever, pending further orders of this court," and orders Robinson to "remove the entire fence on the North and South end of the disputed property * * * no later than March 16, 1998." We do not find this language ambiguous or insufficient to advise Robinson of the proscribed conduct.
After hearing the evidence the court orally stated:
I have been out there on two different occasions. I think the evidence has shown a conscious and deliberate disregard for the orders of the court. * * * It was very clear about what was to be done at least for a year after the judgment became final. * * * I think the order was deliberately violated.
Given the clarity of the court's orders, the amount of time involved, the testimony offered, and the court's personal inspection of the site, we perceive no manifest error in the finding that Robinson intentionally and knowingly failed to remove the encroaching fence and the obstruction to Robinson Road. Lirette v. Griffin, supra. This assignment lacks merit.

*108 Conclusion

For the reasons expressed, the judgment is amended to delete the award of $2,000 in attorney fees. In all other respects, the judgment is affirmed, at equal costs to appellants and appellees.
AMENDED AND AFFIRMED.
NOTES
[1] At the instant hearing, May 6, 1998, this defendant gave her name as Ruthie R. Franklin.
[2] The procedural device directly to enforce a judgment of possession is the writ of distringas, La. C.C.P. arts. 2501-2504. The redactors have observed that this writ is "seldom used." C.C.P. art. 2502, Official Revision Comment (a).
[3] This hearing was not transcribed. The court minutes show that the judge inspected the site.
[4] Although the ruling on the exception is date-stamped one day after the amended petition, we assume the ruling actually occurred first.
[5] Since a 1995 amendment to La. C.C.P. arts. 642 and 927, the classification of parties as indispensable or necessary has been suppressed. La. Acts 1995, No. 662, effective August 15, 1995. The correct title for this exception is "failure to join parties needed for just adjudication."
[6] The District Court did, however, sustain Robinson's exception of unauthorized use of summary proceedings. R.p. 52.
[7] There is also no authority for attorney fees under the writ of distringas. La. C.C.P. art. 2502(3).
[8] Exhibit A is signed by the District Court, while Exhibit C bears the rubber stamp of his name.